# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| WEEMS INDUSTRIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> PLEWS, INC., <br><br> Defendant. | No. 16-CV-109-LRR <br><br> **ORDER** |

_____

## *TABLE OF CONTENTS*

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.  RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . *2*

*III. FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    *A.   Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    *B.   Overview of the Dispute* . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*IV. ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
    *A.   Acquired Distinctiveness* . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
    *B.   Functionality* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

*V.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *17*

## *I. INTRODUCTION*

The matter before the court is Defendant Plews, Inc.'s ("Plews") "Partial Motion to Dismiss Plaintiff's Amended Common Law Trademark Infringement Claim" ("Motion") (docket no. 25).

## II. RELEVANT PROCEDURAL BACKGROUND

On October 28, 2016, Plaintiff Weems Industries, Inc. ("Weems"), filed an Amended Complaint (docket no. 16)[1] asserting the following claims: (1) Plews infringed on Weems's registered trademark by using the color chartreuse on the body of its compressed air hoses in violation of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a); (2) Plews infringed on Weems's common law trademark by using the color chartreuse on the body of its compressed air hoses; (3) Plews contributed to the infringement of Weems's trademark by supplying chartreuse air hoses to third parties for sale; (4) Plews interfered with Weems's contractual relations by employing one of Weems's prior employees despite having knowledge that such employee had entered into a non-compete agreement with Weems; (5) Plews misappropriated Weems's trade secrets in violation of Iowa's version of the Uniform Trade Secrets Act, Iowa Code § 550.4; (6) Plews interfered with Weems's prospective contractual relations by misappropriating trade secrets and using them to coopt Plews's business relationships with third parties; (7) Plews's use of the color chartreuse on the body of its air hoses and distribution to third parties constitutes unfair competition under federal law; and (8) Plews's misappropriation of trade secrets and trademark infringement constitutes unfair competition under Iowa law.

On November 17, 2016, Plews filed the Motion. On that same date, Plews filed an Answer (docket no. 26), generally denying liability and setting forth affirmative defenses. In the Answer, Plews did not respond to the factual allegations regarding Count II, but stated that it had "separately moved to dismiss" Weems's common law trademark claim. *See* Answer at 18. On December 5, 2016, Weems filed a Resistance (docket no.

---

[1] Weems amended its original Complaint (docket no. 2), pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), in response to Plews's first motion to dismiss (docket no. 11), which made similar arguments to those made in the Motion. *See* Fed. R. Civ. P. 15(a)(1)(B) (permitting a party to amend its pleading as a matter of course within twenty-one days of service of a Rule 12(b) motion to dismiss).

27). On December 12, 2016, Plews filed a Reply (docket no. 28). Neither party has requested oral argument and the court finds that oral argument is unnecessary. The Motion is fully submitted and ready for decision.

## III. FACTUAL BACKGROUND

Accepting all factual allegations in the Amended Complaint as true and drawing all reasonable inferences in favor of Weems, the relevant facts are as follows:

### A. *Parties*

Weems is a corporation organized and existing under the laws of the State of Iowa, with its principal place of business in Marion, Iowa. Weems does business under the name Legacy Manufacturing Company. Plews is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Dixon, Illinois.

### B. *Overview of the Dispute*

Weems manufactures chartreuse-colored compressed air hoses and markets them under the name "Flexzilla®." Amended Complaint ¶ 8. Weems has marketed the chartreuse color of its air hoses as a trademark (the "mark"), has termed the color "ZillaGreen™" and adopted the slogan, "If it's not ZillaGreen™, it's not FlexZilla®." *Id.* ¶ 22. These and other advertisements regarding the chartreuse air hoses have been published through a variety of media throughout the United States including in catalogues and trade journals, at trade shows and on Weems's website. *Id.* ¶¶ 24-25. In all, Weems has spent over $5,000,000 advertising and marketing its chartreuse products, including water hoses, electrical cords, hose reels, pneumatic couplers and air hoses. *Id.* ¶¶ 24, 27.

The color chartreuse is not a natural by-product of the production of air hoses, instead requiring Weems to add specific dyes and/or pigments during the manufacturing process to achieve it. *Id.* ¶ 9. In fact, other compressed air hoses in the market come in a variety of other colors and shades, including orange, red, blue and black. *Id.* ¶ 10. It is not less expensive to manufacture chartreuse colored air hoses and Weems maintains that

the color chartreuse is an "arbitrary embellishment" that was adopted primarily as a source-identifying feature, rather than a utilitarian one. *See id.* ¶¶ 11-17. Weems has maintained the continuous and substantial use of the color chartreuse, in connection with compressed air hoses, since early 2007, at which time no other manufacturer was selling a similar product. *Id.* ¶¶ 18, 19. On October 6, 2015, Weems registered its mark, described as "the color chartreuse as applied to the entire hose body of the goods" on the Principal Register, maintained by the United States "Patent and Trademark Office" ("PTO"), as Registration No. 4,827,169 (the "'169 Registration"). *Id.* ¶ 20.

Weems alleges that the color chartreuse as applied to the body of its air hoses has acquired secondary meaning in the eyes of consumers—in other words, chartreuse-colored air hoses have a source-identifying significance, such that consumers associate such products with Weems. *See id.* ¶ 28. In particular, Weems has conducted at least one customer survey of products, including, but not limited to, compressed air hoses, in the pneumatics industry, and found that customers associate chartreuse-colored air hoses exclusively with Weems, and not with any other company. *Id.* ¶ 29. Weems also alleges that its "direct competitors have acknowledged that [its] chartreuse colored compressed air hoses are 'industry leading.'" *Id.* ¶ 31. Additionally, Weems is aware of at least one distributor who has expressed actual confusion between Weems's product and a competitor's similar product. *See id.* ¶ 58.

Shortly after Weems adopted the mark, Plews began selling a similarly-colored air hose under its own brand, Amflo™. *Id.* ¶ 32. On May 3, 2010, Weems sent Plews[2] a letter, advising Plews that it owned the trademark at issue, and Plews's attorney acknowledged receipt of the letter. *Id.* ¶¶ 33, 34. Similarly, Weems "has continuously and diligently pursued other entities that began producing confusingly similar chartreuse-colored air hoses" and has been successful in defending its trademark in such actions. *Id.*

---

[2] The letter was sent to Plews's predecessor, Plews & Edelmann.

¶ 35. In 2015, Weems learned that Home Deopt was selling similarly colored compressed air hoses and marketing them under its "Husky®" brand—Weems contacted Home Depot and demanded that it cease and desist the use of Weems's mark. *Id.* ¶¶ 45, 46. Plews later contacted Weems and informed Weems that it had supplied some of the Husky® branded air hoses to Home Depot. *Id.* ¶ 47. Around the same time, Plews began selling a chartreuse-colored premium hybrid air hose dubbed the Ultra Air® hose under its Amflo™ brand. *Id.* ¶ 50. Plews has supplied its chartreuse-colored hoses to a variety of retailers and continues to supply air hoses to Home Depot for its Husky® brand. *Id.* ¶¶ 51-53.

## IV. ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The question for a court considering a Rule 12(b)(6) motion is not whether the plaintiff will ultimately prevail, but rather "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (citation omitted). In order to cross the federal court's threshold, the complaint need "not [be] a model of the careful drafter's art," nor need it "pin plaintiff's claim for relief to a precise legal theory." *Id.* at 530. To be sufficient, a complaint must simply state a "plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Id.* (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1219 (3d ed. 2004 & Supp. 2010)).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility

5

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Although a plaintiff need not provide "detailed" facts in support of his or her allegations, the "short and plain statement" requirement of Federal Rule of Civil Procedure 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 677-78 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary [under Rule 8(a)(2)]."). It is insufficient to "plead[] facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"Where the allegations show on the face of the complaint [that] there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)). Although the court must accept as true all factual allegations contained in the Complaint, the court need not accept legal conclusions disguised as facts. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

"To succeed on a common-law trademark infringement claim and to obtain injunctive relief, a plaintiff must prove (1) that it has a valid trademark or a protectable proprietary right in the [mark] it seeks to exclude others from using, and (2) that there has been infringement of that right." *Commercial Sav. Bank v. Hawkeye Fed. Sav. Bank*, 592 N.W.2d 321, 326 (Iowa 1999) (emphasis omitted). In order to have a valid trademark, the Supreme Court has stated that: (1) the alleged mark must be distinctive; (2) the alleged mark must be non-functional; and (3) another's use of the mark must be likely to cause confusion in consumers' minds as to the source of the product bearing the alleged mark or to which the alleged mark refers. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S.

763, 769 (1992). Here, Plews attacks the Amended Complaint and argues that it does not allege facts sufficient to support a finding that the mark is distinctive or that the mark is non-functional. The court shall address each of these arguments separately.

### A. *Acquired Distinctiveness*

Plews asserts that the court should dismiss Count II of the Amended Complaint because Weems has not alleged sufficient facts to support a finding that the color chartreuse has "acquired distinctiveness" through secondary meaning. *See* Brief in Support of the Motion (docket no. 25-1) at 5. Plews argues that the mark cannot have acquired distinctiveness before January of 2010 because Weems had applied for, and been denied, registration on the Principal Register by the PTO at that time. *Id*. at 6-7. According to Plews, the PTO determined that the mark had not acquired distinctiveness at that point, and thus the registration was amended to the Supplemental Register. *See id.* at 8. Plews contends that Weems must allege, with specificity, actions that it took granting the mark secondary meaning between the time that its initial application to the Principal Register was denied in 2010 and the time that it attained registration on the Principal Register in 2015. *Id.* at 7. Plews further asserts that Weems failed to do so. *Id.* Plews also argues that dismissal is appropriate because the type of evidence on which Weems relies to demonstrate acquired distinctiveness is the same sort of evidence that it presented to the PTO in 2010, when its initial application to the Principal Register was denied. *Id.* at 8-9. Plews further observes that the surveys on which Weems relies made reference to a wide range of products, and did not pertain solely to the compressed air hoses. *Id.* at 8. Finally, Plews asserts that the Amended Complaint is self-contradictory as to when Weems attained exclusive and continuous use of the mark, making dismissal appropriate. *Id.* at 9-10.

Weems argues that dismissal is not appropriate on these grounds because the inquiry into whether a mark has acquired distinctiveness through secondary meaning is fact-

intensive. *See* Resistance at 4. Weems directs the court to factual allegations in the Amended Complaint regarding customer testimony or surveys; exclusivity, length and manner of the use of the mark; the amount and manner of Weems's advertising efforts; Weems's established place in the market; and evidence of intentional copying of its mark. *See id.* at 4-6. Weems further argues that Plews's focus on any sort of "relevant time period" during which the mark had to have acquired secondary meaning is misplaced because "the time and segregation issues raised do not go to the sufficiency of its pleading, but only its strength." *Id.* at 6. Weems also states that its 2010 application to the Principal Register was not rejected by the PTO, but rather Weems voluntarily amended its application such that it would be placed on the Supplemental Register. *See id.* at 7. Weems asserts that such an action does not constitute an admission that the mark had not acquired distinctiveness. *Id.* Finally, Weems argues that, because it has plead actual confusion in the marketplace between it and a competitor's products, it has necessarily demonstrated secondary meaning. *Id.* at 7-8.

"The general rule regarding distinctiveness is clear: An identifying mark is distinctive and capable of being protected if it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Two Pesos, Inc.*, 505 U.S. at 769 (emphasis omitted); *see also Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211 (2000) ("[A] mark has acquired distinctiveness, even if it is not inherently distinctive, if it has developed secondary meaning, which occurs when, 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'" (second alteration in original) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982))). The Supreme Court has held that color marks can never be inherently distinctive. *See Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 162-63 (1995). Therefore, in order to state a plausible claim for common law trademark

8

infringement, the Amended Complaint must assert facts supporting a finding of acquired distinctiveness.

"In determining whether a mark has acquired distinctiveness, *i.e.*, secondary meaning, 'the chief inquiry is whether in the consumer's mind the mark has become associated with a particular source.'" *Lovely Skin, Inc. v. Isthar Skin Care Prods., LLC*, 745 F.3d 877, 882 (8th Cir. 2014) (quoting *Co-Rect Prods., Inc. v. Marvy! Advert. Photography, Inc.*, 780 F.2d 1324, 1332-33 (8th Cir. 1985)). Courts consider a variety of factors in determining whether a mark has acquired distinctiveness, including: (1) length of time of a mark's use; (2) the effectiveness of marketing efforts; and (3) intentional copying of the mark by a competitor. *See Co-Rect Prods.*, 780 F.2d at 1332-33 (citing *Sec. Ctr., Ltd. v. First Nat'l Sec. Ctrs.*, 750 F.2d 1295, 1301 (5th Cir. 1985); *Brooks Shoe Mfg. v. Suave Shoe Corp.*, 716 F.2d 854, 860 (2d Cir. 1983)). There is no bright-line rule regarding length of use, but courts generally require a substantial amount of time before granting trademark protection. *See id.* at 1332 (collecting cases and noting that courts had found nine months, ten months, two years and nine years' use to be insufficient, but also noting that other courts have found that three years and ten years' use were sufficient). The Code of Federal Regulations, with respect to registry on the Principal Register, states that the appropriate amount of time to consider is "[f]ive years substantially exclusive and continuous use in commerce." 37 C.F.R. § 2.41(a)(2). Additionally, the Code of Federal Regulations lists the following as other relevant evidence of distinctiveness: statements or other evidence "showing duration, extent, and nature of the use in commerce and advertising expenditures in connection therewith" and "statements from the trade or public, or both." *Id.* § 2.41(a)(3).

Here, Weems has pled continuous and substantial use of its mark since 2007. *See* Amended Complaint ¶ 19. Weems has also detailed its advertising efforts. For example, it alleges that it has dubbed the chartreuse color of the hoses "ZillaGreen™" and adopted

the slogan, "If it's not ZillaGreen™, it's not FlexZilla®." *Id*. ¶ 22. Weems states that it has spent in excess of $5,000,000 in advertisements in various media—and further alleges that the advertising efforts have been successful to the point where its competitors have acknowledged that products bearing its mark are industry leading, customer surveys demonstrate that products bearing its mark are associated specifically with Weems and use of the mark by competitors has produced at least one instance of actual confusion in the marketplace. *See id*. ¶¶ 24-25, 29, 31, 58. Such facts are sufficient to allege acquired distinctiveness.

The court reiterates that complaints need "not [be] a model of the careful drafter's art." *Skinner*, 562 U.S. at 529-30; *see also* Fed. R. Civ. P. 8(a)(2) (describing the pleading standard as requiring "a short and plain statement" of the claim). So long as the facts as alleged in the pleading are sufficient to state a plausible claim for relief, the complaint will survive a Rule 12(b)(6) motion to dismiss. *See Iqbal*, 556 U.S. at 678. Here, even though the statements regarding Weems's efforts are undated, the court does not view that alone as a bar to suit. Though perhaps not pled with a high degree of specificity, assuming all of the allegations are true, Weems has alleged at least a "plausible" claim for relief. For example, though the Amended Complaint does not specifically allege the time period during which Weems undertook advertising efforts, or when it conducted customer surveys, it is at least plausible that such actions occurred during the time that Plews views as relevant.

However, even considering Plews's arguments regarding Weems's lack of specific dates in the Amended Complaint, the court is still unpersuaded. With respect to any efforts undertaken prior to 2010, when the mark was placed on the Supplemental Register, the court notes that the United States Code specifically states that "[r]egistration of a mark on the supplemental register shall not constitute an admission that the mark has not acquired distinctiveness." 15 U.S.C. § 1095. Thus, it is possible to view the amending

10

of the application to the Supplemental Register, even if prompted by the PTO's indication that the mark had not acquired distinctiveness, as an admission against interest that measures taken prior to 2010 may not have been sufficient to establish acquired distinctiveness. However, this does not estop Weems from alleging them as evidence that the mark had secondary meaning prior to that date, as recognized by a preeminent treatise on trademark law. *See* 3 McCarthy on Trademarks and Unfair Competition § 19:43 (4th ed. 2004 & Supp. 2017) (citing *Cal. Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451 (9th Cir. 1985)) ("[A]pplication for the Supplemental Register is an admission against interest that the term . . . does not yet have secondary meaning. . . . There is a significant evidentiary distinction between an estoppel and an admission against interest.").

With respect to efforts undertaken after Weems attained registration on the Principal Register in 2015, the court believes that such measures need not be discounted in determining whether Weems has stated a claim of common law trademark infringement. Plews's argument that efforts taken after registration of a mark are insufficient to support a common law trademark infringement claim appears to rest on the correct assumption that efforts taken after registration cannot demonstrate the acquisition of secondary meaning because the PTO has already determined that secondary meaning was established at the time of registration. This argument fails because, in the event the court determines that it should cancel the '169 Registration, as Plews requests, *see* Answer at 36, that would leave the common law rights underlying the mark undisturbed. *See San Juan Prods., Inc. v. San Juan Pools of Kan., Inc.*, 849 F.2d 468, 474 (10th Cir. 1988) ("Unlike the registration of a patent, a trademark registration of itself does not create the underlying right to exclude. Nor is a trademark created by registration." (emphasis and citation omitted)); *see also, e.g.*, *Crash Dummy Movie, LLC v. Mattel, Inc.*, 601 F.3d 1387, 1391 (Fed. Cir. 2010) ("[C]ancellation of a trademark registration does not necessarily translate into abandonment of common law trademark rights."). While it is true that "[a] plaintiff

11

must establish secondary meaning in a mark at the time and place that the defendant began the use of the mark," *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000), this does not necessarily exclude actions taken after the registration of a trademark, so long as the trademark had acquired secondary meaning prior to a defendant's use of the mark. While Weems does not specifically allege when it took certain efforts to establish that its mark had acquired distinctiveness, it is not barred from pursuing its claims merely because some of its efforts may have taken place after its mark obtained registration on the Principal Register. Whether such efforts predated Defendant's alleged infringement is not properly decided on a motion to dismiss where the factual allegations plausibly state a claim. Accordingly, the court shall deny the Motion on these grounds.

## B. *Functionality*

Plews argues that the court should dismiss Count II of the Amended Complaint because Weems has not alleged facts sufficient to support its allegations that the mark is non-functional. *See* Brief in Support of the Motion at 10-11. Plews claims that Weems merely parrots the factors of the test for determining whether a mark is functional without supporting factual allegations. *Id.* at 11. Plews argues that, because such allegations are conclusory, the Amended Complaint cannot survive a motion to dismiss. *Id.* Plews further argues that Weems has contradicted statements made in its 2010 application to the Principal Register that the chartreuse color "has the potential to be more visible than some other colors" by now stating that the mark is non-functional. *Id.* at 12 (quoting Exhibit A (docket no. 11-2) at 6). Plews also points to "several consensus and federal standards [that] identify the color green—including chartreuse—[as being] functional." *Id.* at 12.

Weems argues that, like acquired distinctiveness, whether a mark is functional is a fact-intensive inquiry that should not be decided on a motion to dismiss. *See* Resistance at 8. Weems further argues that the allegations in the Amended Complaint are not so

conclusory that dismissal is warranted. *Id.* at 8-9. Weems asserts that, merely because the color chartreuse has a utilitarian purpose, that does not render it functional as applied to compressed air hoses because of "the wide varieties of colors available to competitors" that serve the same function. *Id.* at 9-10. Finally, Weems argues that the federal standards that Plews references are inapplicable because they merely reference the color "green," do not apply to the compressed air hoses at issue and designate commercial standards, inapplicable to the uses for which Weems sells its hoses. *Id.* at 10.

"In trademark law, 'a product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'" *Frosty Treats Inc. v. Sony Comput. Entm't Am. Inc.*, 426 F.3d 1001, 1007 (8th Cir. 2005) (internal quotation marks omitted) (quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001)). "Furthermore, 'to be functional in the trade dress sense, the feature must be necessary to afford a competitor the means to compete effectively.'" *Id.* (quoting *Home Builders Ass'n of Greater St. Louis v. L&L Exhibition Mgmt., Inc.*, 226 F.3d 944, 948 (8th Cir. 2000)). The Eighth Circuit Court of Appeals has described the functionality test as follows:

> If the particular feature is an important ingredient in the commercial success of the product, the interests in free competition permits its imitation in the absence of a patent or copyright. On the other hand, where the feature or, more aptly, design, is a mere arbitrary embellishment, a form of dress for the goods primarily adopted for purposes of identification and individuality and, hence, unrelated to basic consumer demands in connection with the product, imitation may be forbidden where the requisite showing of secondary meaning is made. Under such circumstances, since effective competition may be undertaken without imitation, the law grants protection.

*Gateway, Inc. v. Companion Prods., Inc.*, 384 F.3d 503, 508 (8th Cir. 2004) (quoting *Prufrock Ltd. v. Lasater*, 781 F.2d 129, 133 (8th Cir. 1986)). Put another way, if the

trade dress places a competitor "at a significant non-reputation-related disadvantage," then it is functional. *Id.* (citing *Qualitex*, 514 U.S. at 165). "[W]hen the color applied to goods serves a primarily utilitarian purpose it is not subject to protection as a trademark." *Master Distribs, Inc. v. Pako Corp.*, 986 F.2d 219, 224 (8th Cir. 1993) (quoting In re *Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 1120-21 (Fed. Cir. 1985)).

However, courts have also recognized that "[s]ome designs adopted for the purpose of identification are not wholly useless but perform a utilitarian function" and marks that are "merely incidentally functional" may still be protectible—the underlying inquiry remains "whether protection against imitation will hinder the competitor in competition." *Truck Equip. Serv. Co. v. Fruehauf Corp.*, 536 F.2d 1210, 1218 (8th Cir. 1975), *superseded on other grounds*, 15 U.S.C. § 1117(a), *as recognized in Wildlife Research Ctr., Inc. v. Robinson Outdoors, Inc.*, 409 F. Supp. 2d 1131, 1136 n.3 (D. Minn. 2005); *see also Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 813 (5th Cir. 1989) ("A design that 'merely assists in a product or configuration's utility' is not functional and may be protected." (quoting *Sicilia Di R. Biebow & Co. v. Cox*, 732 F.2d 417, 429 (5th Cir. 1984))); *Warner Bros., Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 331 (2d Cir. 1983) ("A design feature of a particular article is 'essential' only if the feature is dictated by the functions to be performed; a feature that merely accommodates a useful function is not enough."). *But see Arlington Specialties, Inc. v. Urban Aid, Inc.*, 847 F.3d 415, 420 (7th Cir. 2017) ("The question is not . . . whether the claimed trade dress has 'less utility' than alternatives.").

Here, the Amended Complaint contains various allegations stating that the color chartreuse is not a natural by-product of the production of the hoses, nor does it impact the cost of production of the hoses. *See* Amended Complaint ¶¶ 9, 14. The Amended Complaint also alleges that the color chartreuse is not essential to, and does not provide a utilitarian benefit for the use of, compressed air hoses. *Id.* ¶¶ 12-13, 15. It states that

a variety of other colors are available to compressed air hose manufacturers such as orange, red, blue and black. *Id.* ¶ 10. The court finds that, while a close call, the Amended Complaint states facts sufficient to support a finding that the mark is nonfunctional. While the court recognizes that the chartreuse color may make it easier to see the air hose and thus perhaps prevent it from becoming a tripping hazard, a feature of which Weems is apparently aware, *see* Brief in Support of the Motion at 12 (noting that, in the prosecution of the '169 Registration, Weems indicated that the chartreuse color had the potential to be more visible than other colors), the color is more a feature that is incidentally functional than a feature "which constitutes an improvement in the operation of the goods." *Warner Bros., Inc.*, 724 F.2d at 331. The court is guided by the fact that the foreclosure of the use of the color chartreuse on compressed air hoses would not hinder competition because competitors can and do produce air hoses in a variety of colors, many of which are or could be made to be just as visible as chartreuse. *See* Amended Complaint ¶ 10. Additionally, accepting Weems's allegations as true, its primary purpose in adopting the mark was not to make its hoses visible, but rather "for purposes of identification and individuality." *Id.* ¶ 17; *see Master Distribs, Inc.*, 986 F.2d at 224.

Plews alleges that the allegations in the Amended Complaint are conclusory, and thus do not survive a motion to dismiss. *See* Brief in Support of the Motion at 11. However, the cases on which Plews relies merely state that the alleged mark is nonfunctional, parrot various legal standards regarding functionality or vaguely state that nonspecific aspects of the mark are nonfunctional. *See id.* at 11 (citing cases). Here, the Amended Complaint has alleged facts underlying its allegations that the color chartreuse is nonfunctional. For example, it states that other competitors manufacture hoses in different colors, that it must take specific steps to achieve the color chartreuse on its hoses, the color is not a natural by-product of the hose's manufacturing process and other

allegations. Such allegations are dissimilar to the bare, conclusory allegations in the cases Plews cites.

Furthermore, the court is unpersuaded by Plews's reference to certain federal standards regarding the color of air hoses. The court may consider materials necessarily embraced by the pleadings, as well as items subject to judicial notice and exhibits attached to the complaint, on a motion to dismiss without conversion to a motion for summary judgment.[3] *See Williams v. Emp'r's Mut. Cas. Co.*, 845 F.3d 891, 903-04 (8th Cir. 2017). Even taking the Small Business Handbook from the "Occupational Safety and Health Administration" ("OSHA") into account, however, the court finds that it does not preclude Weems from alleging a claim of common law trademark infringement. The OSHA materials specifically refer to "welding, cutting and brazing," activities for which Weems claims its hoses are not suited. *See* Exhibit 2 at 5 (formatting omitted); *see also* Resistance at 10. Additionally, as Weems notes, the OSHA handbook's reference to an "oxygen hose" color requirement merely states "green," without specific reference to the color chartreuse. Exhibit 2 at 5. The color chartreuse is better described as a yellow-green color, which does not necessarily fall under the OSHA standard. Finally, it is unclear, based on the OSHA materials, whether a compressed air hose would be required to be green, as Plews argues, or black ("for inert gas and air hoses") as Weems argues. *See* Brief in Support of the Motion at 12; Resistance at 10; Exhibit 2 at 5. In any event, the court cannot conclude that dismissal is proper based on the OSHA standards at this time. As the court noted with respect to acquired distinctiveness, a plaintiff is not required to perfectly draft its complaint, and the pleading standard is not onerous. *See Skinner*, 562 U.S. at 529-30. While Weems may not ultimately persuade a trier of fact that its mark is

---

[3] The court notes that the materials on which Plews relies were attached as Exhibit 2 (docket no. 9-2) to its answer to the original complaint, but were not attached to its Answer to the Amended Complaint.

nonfunctional, it has pleaded sufficient facts to plausibly state that it is nonfunctional and defeat a motion to dismiss. Accordingly, the court shall deny the Motion.

## V. CONCLUSION

In light of the foregoing, the Motion (docket no. 25) is **DENIED**. All counts against Plews remain in the action..

**IT IS SO ORDERED.**

**DATED** this 13th day of April, 2017.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA